Approved: _____
LAUREN SCHORR
Assistant United States Attorney

ORIGINAL

U.S. DISTRICT COURT
FILED
SEP 20 2018
S.D. OF N.Y.

DOC #_____

Before:  HONORABLE ONA T. WANG
         United States Magistrate Judge
         Southern District of New York

**18 MAG 8045**

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :

              - v. -              :

JOSUE GARCIA,                     :
JUNIOR BELLIARD,
HECTOR BUENO,                     :
MARCOS CAMUE,
OMAR DELEON,                      :
WANDER REYES, and
JOSE RODRIGUEZ,                   :

              Defendants.         :

- - - - - - - - - - - - - - - - X

**COMPLAINT**

Violation of
18 U.S.C. §§ 1951, 924(c)
and 2; 21 U.S.C. §§ 841 and
846

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

        JOSE SANDOBAL, being duly sworn, deposes and says that
he is a Detective with the New York City Police Department, and
charges as follows:

                        COUNT ONE

        1.    From in or August 2018 through in or about September
2018, in the Southern District of New York, and elsewhere, JOSUE
GARCIA, JUNIOR BELLIARD, HECTOR BUENO, MARCOS CAMUE, OMAR DELEON,
WANDER REYES, and JOSE RODRIGUEZ, the defendants, and others known
and unknown, unlawfully and knowingly did combine, conspire,
confederate, and agree together and with each other to commit
robbery, as that term is defined in Title 18, United States Code,
Section 1951(b)(1), and would and did thereby obstruct, delay, and
affect commerce and the movement of articles and commodities in
commerce, as that term is defined in Title 18, United States Code,
Section 1951(b)(3), to wit, the defendants agreed to rob an
individual they believed to be a heroin and cocaine dealer in the
vicinity of 218th Street and Seaman Avenue, New York, New York.

(Title 18, United States Code, Section 1951.)

## COUNT TWO

2.    From at least in or about August 2018 through in or about September 2018, in the Southern District of New York and elsewhere, JOSUE GARCIA, JUNIOR BELLIARD, HECTOR BUENO, MARCOS CAMUE, OMAR DELEON, WANDER REYES, and JOSE RODRIGUEZ, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate and agree, together and with each other, to violate the narcotics laws of the United States.

3.    It was a part and an object of the conspiracy that JOSUE GARCIA, JUNIOR BELLIARD, HECTOR BUENO, MARCOS CAMUE, OMAR DELEON, WANDER REYES, and JOSE RODRIGUEZ, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

4.    The controlled substances that JOSUE GARCIA, JUNIOR BELLIARD, HECTOR BUENO, MARCOS CAMUE, OMAR DELEON, WANDER REYES, and JOSE RODRIGUEZ, the defendants, conspired to distribute and possess with the intent to distribute were five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A), and one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

## **COUNT THREE**

5.    From at least in or about August 2018 through in or about September 2018, in the Southern District of New York, and elsewhere, JOSUE GARCIA, HECTOR BUENO, OMAR DELON, and WANDER REYES, the defendants, during and in relation to a crime of violence and a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the offenses charged in Counts One and Two of this Complaint, knowingly did use and carry a firearm, and in furtherance of such crimes, did possess a firearm, and did aid and abet the same.

(Title 18, United States Code, Section 924(c)(1)(A)(i) and 2.)

2

The bases for my knowledge and the foregoing charges are, in part, as follows:

6. I am a Detective with the New York City Police Department ("NYPD"), and I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement officers and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

7. Based on my participation in this investigation, including my participation in surveillance, my debriefings of two confidential sources ("CS-1" and "CS-2")[1], and my review of recorded conversations, phone calls, and text messages,[2] I have learned the following, in substance and in part:

a. On or about August 30, 2018, JOSUE GARCIA, the defendant, participated an in-person recorded conversation with another confidential source and CS-1. GARCIA arrived at the meeting in a Black Acura MDX (the "Acura"), which was being driven by DELEON CEBALLOS, the defendant. During that conversation, CS-1 represented being involved in an upcoming transportation of 15 kilograms of heroin(the "Narcotics Delivery"), and GARCIA stated

---

[1] CS-1 has been working with the NYPD and other law enforcement officers in the hopes of receiving cooperation credit on behalf of an individual currently serving a federal sentence. The information provided by CS-1 has been reliable and independently corroborated.

CS-2 has pled guilty pursuant to a cooperation agreement with the Government, and is cooperating in hopes of receiving leniency at sentencing. The information provided by CS-2 has been reliable and independently corroborated.

[2] The communications between GARCIA, CS-1 and CS-2 were in Spanish. The summaries provided herein are based on draft translations of the communications. The summaries included herein are described in substance and in part, and do not describe the entirety of the communications between CS-1, CS-2, GARCIA, and other participants.

his interest in robbing the Narcotics Delivery, with a crew of individuals. GARCIA explained, in sum and substance, that he needed additional details regarding the Narcotics Delivery, including the type of vehicle making the delivery, how many people would be involved in the transport, whether those individuals would be armed, and the location of the delivery. GARCIA further stated that his crew was ready with guns and Tasers, and that they would purchase zip ties. GARCIA also stated that he and his crew would rent a Ford Taurus and prepare it so that it resembled a police vehicle.

        b.    Soon after the August 30 conversation, CS-1 introduced GARCIA to CS-2 as an individual working with CS-1 to make the Narcotics Delivery.

        c.    On or about September 7, 2018, CS-2 participated in a recorded phone call with GARCIA, who was using a phone number known to be used by GARCIA, and which GARCIA had previously used to communicate with CS-1 (the "Garcia Phone"). During that phone call, CS-2 advised GARCIA to be ready and GARCIA told CS-2 not to worry and that the crew would get together the following day.

        d.    On or about September 9, 2018, CS-2 participated in a recorded phone call with GARCIA who was using the Garcia Phone. During that conversation, GARCIA asked CS-2 if CS-2 had received any updates from CS-1. GARCIA further stated that they were going to meet tomorrow for a practice, which based on my training and experience, and my participation in this investigation, I believe refers to a practice run for the planned robbery.

        e.    On or about September 10, 2018, CS-2 participated in a recorded phone call with GARCIA who was using the Garcia Phone. During that conversation, CS-2 inquired if GARCIA and his crew were ready for the practice run. During that conversation, GARCIA stated that he wanted to know the location, which based on my training and experience, and my participation in this investigation, I believe refers to the location of the narcotics delivery that was the target of the robbery.

        f.    On or about September 11, 2018, CS-2 participated in a recorded phone call with GARCIA who was using the Garcia Phone. During that conversation, CS-2 stated that CS-2 was unable to meet up for the practice run. GARCIA responded that he had the team ready, and that he was expecting the robbery of the Narcotics Delivery to occur that week. CS-2 and GARCIA

4

agreed to meet in person.

g.      On or about September 12, 2018, CS-2 and
GARCIA met in person, and the conversation was recorded.  GARCIA
explained that he wanted to do a practice run that evening or the
following day, and that he wanted to see the two possible locations
for the Narcotics Delivery.  GARCIA further explained that he hoped
that all 15 kilograms of narcotics were cocaine ("P") instead of
heroin ("manteca") because GARCIA was able to sell cocaine more
quickly than heroin, which could take GARCIA a month to sell.
Based on my training and experience, and my conversations with CS-
2, I believe that "P" refers to cocaine, and is an abbreviation
for "perico," which is a street term for cocaine.

h.      On or about September 17, 2018, CS-2 and
GARCIA met in person, along with OMAR DELEON, and another
unidentified male ("CC-1").  CS-2 told GARCIA that CS-1 would be
arriving Wednesday night (September 19) with the narcotics
delivery.  GARCIA stated, in sum and substance, that he had a big
team.  During that conversation, GARCIA also stated the he and his
crew attempted a drug robbery the night before but it did not go
as planned.  GARCIA further stated that one of his crew members
proposed using one car, but that he planned to use three cars so
that the crew could handle the second vehicle expected to be
traveling with CS-1.  GARCIA explained that he and one other crew
member would handle CS-1 and the shipment, while the rest of the
crew handled the second vehicle expected to arrive.  GARCIA further
stated that the crew had a firearm with a silencer ("pistol con
silenciador") and that anyone shot would not feel or hear the shot
until he experienced pain ("nosotros tenemos una pistol con
silenciador de tiro ese tip ova a sentir al tiro cuando el sienta
el dolor es").   DELEON, who arrived during the conversation,
stated, in sum and substance, that if the individuals joining CS-
2 took out a firearm then the crew would already be ready ("Yo te
voy a explicar lo que yo pienso al momento que ellos quieran sacar
eso ya nosotros vamos a estar ensima de ellos.").

i.      Based on my conversations with other law
enforcement officers, I am aware that, on or about September 17,
2018, law enforcement officers observed GARCIA and three other
males in the vicinity of West 218th Street and Seaman Avenue, one
of the locations discussed with GARCIA for the Narcotics Delivery.

j.      On or about September 19, 2018, CS-2 and
GARCIA exchanged communications regarding the Narcotics Delivery,
which was expected to be delivered in the vicinity of West 218th
Street and Seaman Avenue, New York, New York (the "Robbery

Location") between 7:00 p.m. and 9:00 p.m. that evening. During the day on September 19, CS-2 met with GARCIA, DELEON and several other members of the robbery crew in the vicinity of GARCIA's home on Tibout Avenue in the Bronx (the "Garcia Residence"). Law enforcement conducted surveillance of this meeting and observed GARCIA place a black backpack (the "Black Backpack") in the Acura, and another individual ("CC-2") place a grey backpack (the "Grey Backpack") in the Acura. Before leaving the Garcia Residence, GARCIA told CS-2, in sum and substance, that GARCIA had a firearm and that the crew was going to pick up two more firearms. GARCIA and CS-2 then agreed to meet at another location, and law enforcement observed the Acura leave the Garcia Residence, along with the Mazda SUV (the "Mazda") and a BMW. Law enforcement observed JUNIOR BELLIARD, the defendant, inside the BMW.

k. CS-2 and GARCIA continued to communicate about where to meet. Ultimately, at approximately 7:30 p.m., law enforcement observed the Acura, the Mazda, and a black livery cab (the "Livery Cab") arrive in the vicinity of 219th Street between Broadway and Ninth Avenue, New York, New York, just blocks from the Robbery Location. Law enforcement observed CS-2, GARCIA, CC-2, and other individuals gathering outside in the vicinity of 219th Street between Broadway and Ninth Avenue.

l. At approximately 8:05 p.m., CS-2, at the direction of law enforcement, advised GARCIA and the crew to proceed to the Robbery Location. Law enforcement observed that everyone standing outside entered the three vehicles (the Acura, the Mazda, and the Livery Cab). GARCIA and DELEON entered the Acura, and that four cars traveled to the Robbery Location: CS-2's vehicle, followed by the Acura, the Mazda, and the Livery Cab.

m. As the four vehicles approached the Robbery Location, GARCIA informed CS-2 (who was in a separate vehicle) that something was wrong, and the Acura, Mazda, and the Livery Cab all traveled in separate directions, prompting law enforcement intervention.

n. Once I and other law enforcement officers arrived on the scene, the Acura, Mazda, and Livery Cab fled.

8. Based on my participation in this investigation and my conversations with other law enforcement officers, I am aware that, when law enforcement stopped the Acura fleeing from the vicinity of the Robbery Location, all four doors opened and five males exited the vehicle, four of whom have since been arrested:

6

a.    OMAR DELEON, observed by law enforcement to be the driver the Acura, was arrested by law enforcement soon after fleeing from the Acura.

b.    WANDER REYES, the defendant, fled the Acura into a nearby building and was arrested by law enforcement inside the building.

c.    HECTOR BUENO, the defendant, fled the Acura and ran towards a nearby park ("the Park") and was arrested on the street by law enforcement soon thereafter.

d.    JOSUE GARCIA fled the Acura, ran towards a nearby Park, and took a taxi to the Garcia Residence, where he was arrested by law enforcement.

9.    Based on my participation in this investigation and my conversations with other law enforcement officers, I am aware that, when law enforcement stopped the Mazda fleeing from the vicinity of the Robbery Location, two individuals, including MARCUS CAMUE, the defendant, were inside the Mazda. CAMUE was seated in the front passenger seat. CAMUE was arrested by law enforcement.

10.    Based on my participation in this investigation and my conversations with other law enforcement officers, I am aware that, when law enforcement stopped the Livery Cab fleeing from the Robbery Location, two individuals were inside the Livery Cab. JOSE RODRIGUEZ, the defendant, was driving the vehicle, and JUNIOR BELLIARD, the defendant, was in the back seat of the vehicle. Both RODRIGUEZ and BELLIARD were arrested by law enforcement.

11.    Based on my participation in this investigation, my conversations with other law enforcement officers, and my review of law enforcement reports, I am aware that law enforcement recovered two ski masks from inside the Acura, as well as the Black Backpack and the Grey Backpack, which were both empty. I am also aware that surveillance video of the Acura fleeing the Robbery Location depicts at least one object being thrown out of the window of the vehicle. Law enforcement recovered two imitation guns in the vicinity of 215th Street, in the same location the Acura is observed on the surveillance video. One of the two imitation guns contained six cartridges and based on my training and experience, appears to have the

capability of firing bullets and being used as a firearm.[3]

12.    Based on my participation in this investigation,
Based on my participation in this investigation, my
conversations with other law enforcement officers, and my review
of law enforcement reports, I am aware that law enforcement
recovered two ski masks from the Park, in the direction that
GARCIA, BUENO and another male fled.

13.    Based on my participation in this investigation,
my conversations with other law enforcement officers, my review
of recorded interviews of several of the defendants, and my
review of law enforcement reports, I have earned the following,
in sum and substance and in part:

a.    JOSUE GARCIA, the defendant, was interviewed
by law enforcement on or about September 19, 2018.  GARCIA
waived his *Miranda* rights and agreed to speak to law
enforcement.  During the interview, GARCIA stated, among other
things, that he had obtained information about 15 kilograms of
narcotics being delivered, that he worked with another co-
conspirator to organize a robbery crew to rob the 15 kilograms
of narcotics, and that they assembled a crew to rob the 15
kilograms of narcotics on the night of September 19.

b.    OMAR DELEON was interviewed by law
enforcement on or about September 19, 2018.  DELEON waived his
*Miranda* rights and agreed to speak to law enforcement.  During
the interview, DELEON stated, among other things, that he worked
with another co-conspirator to set up a plan to rob a large
quantity of kilograms that was being delivered.

c.    WANDER REYES was interviewed by law
enforcement on or about September 19, 2018.  REYES waived his
*Miranda* rights and agreed to speak to law enforcement.  During
the interview, REYES stated, among other things, that he had
learned from another co-conspirator that there was a large
quantity of narcotics being delivered and REYES agreed to
participate in the robbery of those narcotics.  REYES was to
serve as backup to make sure the area was clear and was to
assist the co-conspirators if necessary.

d.    MARCUS CAMUE was interviewed by law
enforcement on or about September 19, 2018.  CAMUE waived his

---

[3] Law enforcement is sending this imitation firearm to the lab
for operability testing.

*Miranda* rights and agreed to speak to law enforcement. During the interview, CAMUE stated, among other things, that he received a call in the last few days regarding a large delivery or narcotics, asking if he would assist in the robbery of the those narcotics, to which CAMUE agreed. CAMUE was to be inside the Mazda and block the second vehicle expected to arrive with the Narcotics Delivery.

        e.    JOSE RODRIGUEZ was interviewed by law enforcement on or about September 19, 2018. RODRIGUEZ waived his *Miranda* rights and agreed to speak to law enforcement. During the interview, RODRIGUEZ stated, among other things, that he was aware that there was a quantity of narcotics being delivered, and that the plan was to rob the narcotics delivery. RODRIGUEZ was to assist in blocking the second car that had arrived with the Narcotics Delivery, while other co-conspirators obtained the narcotics. RODRIGUEZ expected to make money from his participation in this robbery.

        f.    JUNIOR BELLIARD was interviewed by law enforcement on or about September 19, 2018. BELLIARD waived his *Miranda* rights and agreed to speak to law enforcement. During the interview, BELLIARD stated, among other things, that he was asked to participate in the robbery of a narcotics delivery, to which he agreed.

WHEREFORE, deponent requests that JOSUE GARCIA, JUNIOR BELLIARD, HECTOR BUENO, MARCOS CAMUE, OMAR DELEON, WANDER REYES, and JOSE RODRIGUEZ, the defendants, be imprisoned or bailed, as the case may be.

JOSE SANDOBAL
Detective
New York City Police Department

Sworn to before me this
20th day of September, 2018

HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK